LEE ET AL. *v.* CLEVELAND STATE BANK.
[67 South. 146.]

1. GUARANTY. *Burden of proof. Appeal and error. Review.*

In a suit on a bond given to a bank to secure overdrafts for the purchase of cotton, the sureties have the burden of showing that checks paid by the bank were not given for the purchase of cotton, but for other purposes, since the true state of facts was peculiarly within the knowledge of their principal.

2. SAME.

In such case the defendant sureties cannot complain of an erroneous construction of the bond where, had it been construed as they desired, the result would have been the same.

APPEAL from the circuit court of Bolivar county.

HON T. B. WATKINS, Judge.

Suit by the Cleveland State Bank of Cleveland against J. B. Lee and others. From a judgment for plaintiff, defendants appeal.

Appellee began this suit by declaration in the circuit court, by which he sought to recover the penalty in a bond executed by one J. H. Lee, upon which appellants were sureties. J. H. Lee was in the cotton business at Cleveland, Miss., and, desiring accommodation at the Cleveland State Bank, frequently overdrew his account. The bank informed him that they could not carry his overdraft without security. Thereupon Lee executed the following bond, to wit:

"State of Mississippi, County of Bolivar.

"Know all men by these presents, that we, J. H. Lee, as principal, and J. J. Walker, J. B. Lee and ———, as sureties, are held and firmly bound to the Cleveland State Bank, of Cleveland, Miss., in the penal sum of thirty-five hundred dollars, the payment of which well and truly to be made we do hereby bind our heirs, executors and administrators by these presents firmly forever.

"The condition of the above bond is such that whereas the said J. H. Lee is now engaged in the buying of cotton and in the payment of the same is giving checks on the said Cleveland State Bank, a corporation doing

business under the laws of the state of Mississippi and domiciled at Cleveland. Upon the sale of said cotton by him, he is to deposit the proceeds in said bank. Now should the said J. H. Lee make good and sufficient deposits in said bank to cover all overdrafts incurred by him, then this obligation to be null and void, otherwise to remain in full force and virtue.

"Given under our hands and seals this 16th day of Dec. 1910.          "J. H. LEE, of Merigold, Miss.
"J. J. WALKER, of Merigold, Miss.
"J. B. LEE, of Merigold, Miss."

Thereafter the bank paid his checks and overdrafts until, J. H. Lee having become insolvent, the bank demanded payment of the sum of two thousand and six hundred and one dollars and forty-two cents, the amount of the overdraft. Demand being made first upon the principal, and then upon the sureties who refused to pay the account, this suit was brought. The principal, being insolvent, made no defense. The sureties filed a plea and gave notice, in which they set out the fact that they were guarantors for the purpose of guaranteeing that the principal would turn over the proceeds of the sale of all of the cotton sold by him to said bank after the time of the sale of said cotton, and that plaintiff knew of the sale of the cotton made by their principal, and that they knew of his insolvency, and that they had failed to notify the sureties within a reasonable time that their principal had failed to deposit the proceeds of the sale of all of his cotton with the plaintiff, so as to enable the guarantors to protect themselves against loss.

J. H. Lee testified at the trial that a large number of the checks given by him covered personal items, and were not drawn out for cotton; and it is the contention of the sureties that they were sureties only for the overdrafts incurred by the principal in the cotton business, and were not responsible for money withdrawn from the bank by their principal for his personal expenditures; while the bank contends that the sureties were liable for all overdrafts incurred by J. H. Lee; and

that they were not required to inquire of the purpose of each check drawn by J. H. Lee, or to investigate how the money drawn from the bank was spent by him; but that the bond covered the dealings between it and J. H. Lee, and served as an indemnity against loss by all overdrafts incurred by J. H. Lee.

Proof also showed that the total amount of checks, J. H. Lee drew for his personal use was two thousand and three hundred and thirty dollars and six cents, which amount, being deducted from the total number of checks of ten thousand and six hundred and ninety-six dollars and fifty-eight cents, left an amount paid for cotton, to wit, eight thousand and three hundred and sixty-six dollars and fifty-two cents. It was shown that the amount deposited from sales of cotton was five thousand and six hundred and seventeen dollars, which, subtracted from amounts paid out for cotton, left a balance of two thousand and seven hundred and forty-nine dollars and fifty-two cents, as an overdraft on cotton. And the books showed that he also deposited the sum of two thousand and four hundred and seventy-eight dollars and sixteen cents which had not come from the sale of cotton. Taking from this amount his personal checks of two thousand and three hundred and thirty dollars and six cents leaves an excess in his personal checks of one hundred and forty-eight dollars and ten cents, which taken from the overdraft on the cotton account, to wit, two thousand and seven hundred and forty-nine dollars and fifty-two cents, left a cotton overdraft of two thousand and six hundred and one dollars and forty-two cents—the amount sued for.

The plaintiff therefore contends that, even if the contention of the defendants that they were not liable for the overdraft incurred by plaintiff for his personal expenditures be true, the result is the same, since all of the two thousand and six hundred and one dollars and forty-two cents overdraft, as shown on the books, is in fact the exact amount of the overdraft on the cotton business.

The court gave a peremptory instruction for this amount, plus interest and costs, and entered a verdict against the sureties.

*Green & Green* and *T. S. Owen,* for appellants.

*Cutrer & Johnston,* for appellee.

COOK, J., delivered the opinion of the court.

In our opinion it makes no difference whether we adopt the rule of construction of the bond sued on contended for by appellant, or the one contended for by appellee, because the result reached by the trial court was the proper result under either construction.

According to the testimony of Mr. Lee, the principal in the bond, the judgment was correct. He was put on the witness stand to prove what checks and drafts drawn by him were not for cotton transactions, and, after giving him credit for all specified by him, he still owed the bank the amount recovered by it. True, he said there were other debits not for cotton, but he could not point out the items. If Mr. Lee could not point out debits which were not for cotton, we do not believe that the law would require the bank to point out each check which was drawn for cotton. In the very nature of things this would be a practical impossibility. This would be to require the bank to do that which Mr. Lee, who drew the checks, could not do. All the parties will be held to know how the banking business must be conducted, and that the bank could not know whether checks drawn were to pay for cotton, or not. The man who was guaranteed knew, and no one could know better than he what he drew the checks for; and therefore all depended upon him for the information. He admitted that all the checks charged to him were for cotton bought, except those specified by him, and some other which he could not specify.

In the practical administration of justice there can be no doubt that, if the jury had been instructed to solve the question according to rule of construction advanced by appellant, the result would have been the same.

*Affirmed.*